### Application of SOUTHERN GULF UTILITIES, Inc.
Docket No. R-74535-WS(R) Order No. 6579.

Florida Public Service Commission.

March 25, 1975.

R.M.C. Rose, Tallahassee, for the applicant.

William A. Davis, Jr., Jacksonville, for City of Jacksonville Consumer Protection Board, intervenor.

Raymond E. Vesterby, Tallahassee, for the commission staff.

Stanley M. Danek, Tallahassee, for the public generally.

The following commissioners participated in the disposition of this matter — WILLIAM T. MAYO, Chairman, WILLIAM H. BEVIS, PAULA F. HAWKINS.

BY THE COMMISSION.

Pursuant to notice the commission by its duly designated hearing examiner, James M. Barclay, held a public hearing on this matter in Jacksonville on November 20 and 21, 1974.

On July 31, 1974 we received the application of Southern Gulf Utilities, Inc. for an increase in water and sewer rates to its customers in Duval County. The application was filed pursuant to the provisions of §§367.081(2) and (5), Florida Statutes.

Southern Gulf Utilities, Inc. is owned by Amicor Corporation. The principal officers of the utility are J. Peter Martin, president; Margaret Hanley, vice-president; Edward J. Tammy, vice-president; Rex Yates, vice-president; Mark Auerbach, treasurer; and Marshall L. Cohen, secretary.

On August 14, 1974 we issued Order No. 6226, suspending the rate schedules of the utility and ordering a public hearing.

The examiner issued his recommendations on January 27, 1975. He recommended that the utility be authorized to increase its gross annual revenues by $109,976. On February 12, 1975, we received the exceptions filed thereto by the applicant. The examiner did not take into consideration the increased costs of property taxes and chemicals.

### Water and sewer systems

The utility owns and operates nine water and two sewer systems in Duval County, providing service to approximately 1,711 water and 783 sewer customers.

The water systems and number of customers are listed below —

| | |
|---|---|
| Ortega Hills Water System | 505 |
| Westwood Water System | 60 (Unmetered) |
| Riverview Water System | 248 |
| Bonaire Water System | 11 |
| Milmar Water System | 103 |
| Ridgeland Water System | 146 |
| Greenfield Water System | 111 |
| Brackridge Water System | 160 |
| Oak Harbor Water System | 367 |
| | 1,711 |

The sewer systems and number of customers are listed below —

| | |
|---|---|
| Oak Harbor Sewer System | 367 |
| Ortega Hills Sewer System | 426 |
| | 793 |

There were an average of 1,685 residential and 32 commercial water customers billed during 1973.

There were an average of 792 residential and 2 commercial sewer customers billed during 1973.

To visit each treatment facility, beginning and ending at the utility's office, requires traveling 94 miles. For operation and maintenance of these 11 systems, the utility employs a supervisor, two operators, one maintenance man and a maintenance trainee.

The utility recently replaced the Ortega Hills trickling filter sewer facility with a Davco package plant, being operated in the contact stabilization mode at a cost of approximately $100,000.

The utility has recently repaired the aerator at the Oak Harbor and Riverview water plants and the one at Ortega Hills is being repaired. A new high service pump was recently installed at the Brackridge water plant and a new tank at Ridgeland Gardens.

A chlorinator is being installed at the Bonaire water plant. The utility is replacing lines in the Brackridge System.

Mr. Donald C. Bayly, the city's water pollution control engineer, stated the utility will be required to have additional sewer plant operators.

The Ortega Hills sewer facilities are presently meeting state standards, are at capacity and the utility will be required to upgrade the facilities to meet new standards by mid-1977. The contact stabilization facility uses approximately double the electricity of a trickle filter system.

The Oak Harbor sewer system is overloaded, is not meeting state standards, and is presently under moratorium with no additional connections authorized. A flow-meter has recently been installed. This plant will have to be redesigned by mid-1977. The erratic volume of flow indicates there may be ground water infiltration.

Mr. Thomas O. Brian, acting supervisor of the water quality division of the city of Jacksonville health division, environmental branch, testified concerning water quality. He was also of the opinion that the utility employed too few qualified operators. He testified that the water being provided met state standards.

Five customers testified concerning the Ortega Hills water and sewer system. Their complaints on the water included — low water pressure, sediment in water, rotten egg smell, pipes too small for fire protection and frequent outages. One customer testified to frequent lift-station overflows on Ortega Hills Drive.

Two customers testified regarding the Oak Harbor water system. Their complaints concerned low pressure, frequent outages, excessive chlorine in water, odor, sediment in water and difficulty in getting the utility to respond to complaints. One complaint concerned sewer back-up.

One customer testified concerning the Brackridge Water System. The complaint concerned frequent outages and low pressure.

One customer testified concerning the Ridgeland Water System. The complaint involved low water pressure, frequent interruptions of service, and odor from water.

The inspection reports by the engineering staff of this commission's water and sewer department clearly indicate discrepancies in operation and maintenance procedures of the water system. It is clear that additional operations and supervising personnel are needed, together with a program of corrective and preventive maintenance. Operators should be able to spend sufficient time at each plant on a daily basis in order to perform the necessary preventive maintenance and operational procedures to make sure the optimal efficiency is achieved from plant operations.

A necessary item in operations of this nature is a warning system which alerts the designated persons of a malfunction at the treatment plant. The inspection reports indicate that these warning devices at the water plants are operated by batteries which, in eight instances, were dead. There is need to effect a warning system which will alert the utility employees and not a person who resides near the plant. A commonly used and efficient method to provide the signaling of low pressure, low plant levels and/or electrical failure is through leased telephone lines to an answering service and/or to a utility office.

The inspection reports show an almost complete absence of water plant metering devices to measure plant production. A direct or remote reading is essential to efficient plant operation.

### Rates

The utility's gross revenues for water service during 1973 were $96,284. One system, which was sold during 1973, had revenues of $2,071. The adjusted revenues of the remaining systems are $94,213. The utility is requesting an increase of $63,205, for a gross revenue requirement of $157,418.

The utility's gross revenues for sewer service during 1973 were $38,773. One system, which was sold during 1973, had revenues of $1,642. The adjusted revenues of the remaining system are $37,141. The utility is requesting an increase of $114,471, for a gross revenue requirement of $151,602.

The utility is requesting a total increase of $177,675.

The utility last had a rate increase in 1967.

Prior to our jurisdiction on April 1, 1974, the previous regulatory board authorized several water and sewer utilities which made application, to pass on the increased cost of the electric fuel oil adjustment. We are allowing this to continue.

## Rate base and cost of capital
### Rate base

| | Per books | Les excess over orig. cost | Less comm. adj. | Net plant adjusted. |
|---|---|---|---|---|
| Plant in service | $1,577,878 | (284,182) | (6,190) | 1,287,506 |
| Res. for depr. 20.82% | (328,500) | (59,167) | (1,289) | (268,044) |
| | $1,249,378 | (225,015) | (4,901) | 1,019,462 |
| Total CIAC | 625,462 | Less amortization | | (506,381) |
| | | Net rate base plant | | $513,081 |

### Cost of capital

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Equity capital | $258,468 | = | 50.37% | X | 15.00 | = | 7.556 |
| Long term debt | 235,358 | = | 45.87% | X | 12.70 | = | 5.825 |
| Cust. deposits | 19,255 | = | 3.76% | X | 6.00 | = | 0.225 |
| Total capital: | $513,081 | | | | | | 13.606% |

### Operating statement
### Water

| | Company pro-forma | Commission adjustments | | Commission balance |
|---|---|---|---|---|
| | | Debit | Credit | |
| Revenues | $157,418 | (1) 28,838 | | $128,580 |
| Oper. & mtc. exp. | (2) 28,856 | | | 28,856 |
| Cust. accounting | 5,772 | | | 5,772 |
| Adm. & general | 32,167 | | (3) 1,632 | 30,535 |
| Depreciation | 21,001 | | (4) 4,347 | 16,654 |
| Tax. O.T.I. | (5) 7,455 | | (6) 433 | 7,022 |
| Income tax | 22,493 | | (7) 12,265 | 10,228 |
| Total deductions: | $117,744 | | $18,677 | $99.067 |
| Operating income | 39,674 | 28,838 | 18,677 | 29,513 |
| Other income | (66) | (8) 66 | | —0— |
| Int. on L.T. debt | 11,157 | (9) 1,370 | | 12,527 |
| Int. chgd. to constr. | (90) | | | (90) |
| Other interest | 37 | (10) 541 | | 578 |
| | | | | $13,015 |
| Net income: | $28,636 | $30,815 | $18,677 | $16,498 |

1. Reduction in revenue requirement
2. Includes $1,105 increased cost of chemicals
3. Reduction in home office A & G
4. Reduce depreciation to 2.5% of gross plant
5. Includes increased property tax of $2,010
6. Gross receipts tax on reduced revenues
7. Reduction in income tax liability
8. Eliminate
9. Interest adjustment
10. Increase interest on customer deposits to 6%

## Sewer

| | Company pro-forma | Commission adjustments Debit | Credit | Commission balance |
|---|---|---|---|---|
| Revenues | $151,602 | (1)33,210 | | $118,392 |
| Op. & mtc. exp. | (2) 17,689 | | | 17,689 |
| Cust. accounts | 974 | | | 974 |
| Admin. & general | 19,574 | | (3) 1,701 | 17,873 |
| Depreciation | 23,207 | | (4) 4,501 | 18,706 |
| Taxes, O.T.I. | (5) 6,790 | | (6) 498 | 6,292 |
| Income taxes | 29,077 | | (7)12,784 | 16,293 |
| Total deductions: | $97,311 | | $19,484 | $77,827 |
| Operat. income | 54,291 | 33,210 | 19,484 | 40,565 |
| Int. on L.T.D. | 17,677 | | (8) 314 | 17,363 |
| Int. chgd. to const. | (3,152) | | | (3,152) |
| Other interest | 22 | (9) 556 | | 578 |
| Net income: | $39,744 | $33,766 | $19,798 | $25,776 |

1. Reduction in revenue requirement
2. Includes $305 increased cost of chemicals
3. Reduction in home office A & G
4. Reduce depreciation to 2.5% of gross plant
5. Includes increased property tax of $2,052
6. Gross receipts tax on reduced revenues
7. Reduction in income tax liability
8. Interest adjustment
9. Increase interest on customer deposits to 6%.

We find that gross revenues of $246,972 for water and sewer service will provide an operating income of $70,078 which is a return of 13.65% on rate base of $513,081 and which after payment of interest on debt will provide a net income of $42,274 and a return of 16.35% on common equity of $258,468.

The gross revenue increase we have found fair and reasonable is an increase of $34,367 for water service and $81,261 for sewer service.

We do not believe, however, that the quality of service being rendered warrants the total increases to be put into effect at this time.

We recognize the substantial improvements which have been made — however, the entire record reveals additional improvements must be made in facilities, maintenance, and operations.

We have carefully weighed the interests of the customers in receiving the quality of service to which they are entitled and the requirements of the utility for sufficient revenues to enable it to raise the required capital to make those improvements needed.

We have therefore determined that one-half of the increase we have found fair and reasonable may be put into effect at this time as more specifically set forth below and the remaining half put into effect after certain improvements, programs, and studies which are more specifically set forth below are complied with.

In consideration thereof, it is ordered that each and every finding herein is approved in all respects.

It is further ordered that the application for rate relief of Southern Gulf Utilities, Inc., 20215 Northwest Second Avenue, Miami, Florida, for its Duval County operations be and is hereby granted, and consent is hereby given said utility to file revised rate schedules which will provide annual gross revenues of $111,397 for water service and $77,762 for sewer service, based upon the average number of customers served during the test year.

It is further ordered that the increases authorized herein shall not become effective until new rate schedules are filed and approved.

It is further ordered that the utility shall, within 180 days of the date of this order, provide a warning transmitter at each plant to indicate programmed malfunctions at the plant, which directly affect service to its customers. The transmitters will be connected to a central remote receiving station where utility personnel will respond to the signals.

It is further ordered that the utility shall within 120 days of the date of this order install metering devices to measure water treatment plant production.

It is further ordered that the utility shall within 90 days from the date of this order, at its own expense, meter all customers not now metered.

It is further ordered that the utility shall effect a study of required plant operations and maintenance and provide a program and schedule to accomplish it, together with providing the necessary additional personnel. This program and study will be submitted to this commission for approval within 90 days.

It is further ordered that the utility shall effect a study of the engineering reports in this docket and submit a program and time schedule for the correction of the deficiencies noted in those reports. This program will establish priorities for items requiring correction and will designate whether or not they are to be made by the utility's own forces or by outside work forces. The study will be required to be submitted to the commission for approval within 90 days.

It is further ordered that the utility shall submit a plan and time schedule for an infiltration study for repair in the Oak Harbor Sewer System within 60 days.

It is further ordered that the utility shall submit plans and a time schedule for the correction of the cited lift-station problems in the Ortega Hills Sewer System within 30 days.

It is further ordered that a study of the utilities' sewage treatment plants shall be made to determine the required up-grading or construction necessary to meet existing and/or known future treatment standards. The study, with recommendations and cost estimates, shall be made by a registered professional engineer and submitted to this commission within 90 days.

It is further ordered that provisions shall be made whereby the engineer's recommendation shall contain sufficient details as to methodolgy and cost whereby management can make a clear decision as to corrective measures to be taken. Provisions shall be made whereby management shall submit a clear commitment and plans to achieve the corrections and/or up-grading needed which are covered in the ordering paragraphs.

It is further ordered that the utilities shall submit a progress report relating to ordering paragraphs four (4) through twelve (12), covering each thirty-day period, effective the date of the order. Each progress report shall be submitted within ten days of the expiration of each thirty-day period until the provisions of each ordering paragraph have been satisfactorily complied with.

It is further ordered that Southern Gulf Utilities, Inc. may file revised rate schedules which will provide annual gross revenues of $128,580 for water service and $118,392 for sewer service, based upon the average number of customers served during the test year effective upon compliance with ordering paragraphs four (4) through thirteen (13) inclusive and the entering into of contracts to construct those facilities needed to provide water and sewer service meeting state standards and confirmation of such compliance by our staff.

By order of Chairman WILLIAM T. MAYO, Commissioner WILLIAM H. BEVIS, and Commissioner PAULA F. HAWKINS, as and constituting the Florida Public Service Commission, this 25th day of March, 1975.

*William B. DeMilly*
Commission clerk

Special concurring opinion by Commissioner PAULA F. HAWKINS —

Realizing that the customers of this company have suffered considerably as a result of service deficiencies in both water and sewer service, I have reluctantly joined with the majority in granting only half of the staff's recommended increase in gross annual revenues.

I would admonish the management of both the water and sewer systems to take deliberate and positive action in correcting the serious problems outlined in this order and restore an adequate level of service to the subscribers. I am very aware of the large volume of complaints received from customers in my office. As a strong proponent of Florida's Rates and Service Law, I will not vote to authorize any additional increases to this company until their service has improved dramatically.

I believe a consolidation of the executive and management functions of the separate and individual water and sewer operations would result in efficient company operations and subsequent financial savings to customers. The consolidation of the independent companies would also aid the PSC staff in verifying the allocation of management time spent on each system.

In order for the utility to raise the capital needed to restore a reasonable standard of service and to raise the several million dollars that are required to be expended to meet the Department of Pollution Control's very stringent requirements for sewage treatment, I realize that sufficient debt coverage must be provided. But, I would again warn the management of this company that if additional improvements in the facility's maintenance and operations are not made, and if the quality of service does not warrant additional increases to be placed in effect, then the remaining half of the proposed increases could be in serious jeopardy.

I believe it is incumbent upon this commission to carefully weigh the interests of customers and to assure them that they are receiving the quality of service to which they are entitled.